THOMAS P. O'BRIEN
United States Attorney
WAYNE R. GROSS
Assistant United States Attorney
Chief, Santa Ana Branch Office
BRETT A. SAGEL (CBN: 243918)
Assistant United States Attorney
Ronald Reagan Federal Building
411 West Fourth Street, Suite 8000
Santa Ana, California 92701
Telephone: (714) 338-3598
Facsimile: (714) 338-3708
Email: Brett.Sagel@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IGOR M. OLENICOFF,<br><br>Defendant. | SA CR No. 07-227-CJC<br><br>PLEA AGREEMENT FOR DEFENDANT IGOR M. OLENICOFF |

1. This constitutes the plea agreement between IGOR M. OLENICOFF ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the investigation of into tax violations regarding defendant and numerous entities related to defendant. This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

PLEA

2. Defendant gives up the right to indictment by a grand jury, waives venue, and agrees to plead guilty to the one-count

information in the form attached to this agreement or a substantially similar form.

NATURE OF THE OFFENSE

3. In order for defendant to be guilty of count one, which charges a violation of Title 26, United States Code, Section 7206(1), the following must be true: (1) The defendant made and subscribed a return, statement, or other document which was false as to a material matter; (2) The return, statement, or other document contained a written declaration that it was made under the penalties of perjury; (3) The defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and (4) The defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law. Defendant admits that defendant is, in fact, guilty of this offense as described in count one of the information.

PENALTIES

4. The statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1) is: 3 years imprisonment; a 3-year period of supervised release; a fine of $100,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100. The Court may order defendant to pay any additional taxes, interest and penalties that defendant owes to the United States. Also, the Court must order defendant to pay the costs of prosecution, which may be in

addition to the statutory maximum fine stated above.

5. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6. Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

7. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

8. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement and to establish the

sentencing guideline factors set forth in paragraph 12 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

Defendant is the President and Owner of Olen Properties Corporation (hereinafter "OPC"). During the years 1992 through 2004, defendant owned, controlled, and had signatory authority over financial accounts outside of the United States. At least as early as August 1997, defendant listed himself as chairman of Sovereign Bancorp Ltd. (hereinafter "SBL") and President and Director of National Depository Corporation, Ltd. (hereinafter "NDC") on signature cards for Barclays Bank in the Bahamas, which also listed defendant as an authorized signatory on these accounts. Defendant also had signatory authority and controlled several financial accounts with Solomon Smith Barney, which were held in Solomon Smith Barney's office in London, England. Defendant's accounts in Solomon Smith Barney's England offices included accounts in the names of SBL, NDC, Guardian Guarantee Company, Ltd. (hereinafter "GGCL"), Continental Realty Funding Corporation (hereinafter "CRFC"), and Swiss Finance Corporation. Defendant opened several accounts at UBS, formerly known as Union Bank of Switzerland (hereinafter "UBS") in Switzerland, in which defendant had signatory authority and listed himself as Vice President and Director of accounts under the name of GGCL and New Guardian Bancorp APS (hereinafter "NGB"). In addition, defendant also had signatory authority and control over several financial accounts at Neue Bank in Liechtenstein, including an account in the name of NGB.

Defendant directed and authorized transactions from his off-shore financial accounts, including, but not limited to the following transactions. On or about March 9, 1992, defendant transferred approximately $61,000,000 from an OPC account at First Interstate Bank in Newport Beach, California, to a Bank of Montreal account in Canada under the name of NDC. On or about October 5, 1998, defendant directed Solomon Smith Barney to transfer approximately $40,000,000 from an SBL account at Solomon Smith Barney (England) to an SBL account at Barclay's Bank (Bahamas). On or about June 4, 2001, defendant directed Solomon Smith Barney to transfer approximately $17,000,000, $43,000,000, and $58,000,000 from CRFC, NDC, and SBL accounts, respectively, at Solomon Smith Barney (England) to NDC and SBL accounts at Barclay's Bank (Bahamas). On or about December 10, 2001, defendant directed Barclay's Bank to transfer approximately $89,000,000 from a GGCL account at Barclay's Bank (Bahamas) to open the GGCL account at UBS (Switzerland). On or about February 27, 2002, defendant directed Solomon Smith Barney to transfer approximately $38,000,000 from CRFC, NDC, and CRFC accounts at

Solomon Smith Barney (England) to an GGCL account at Barclay's Bank (Bahamas).

For the calendar years 1998 through 2004, defendant filed his United States Individual Income Tax Returns (hereinafter "Form 1040") with the Internal Revenue Service for the respective tax years. Defendant signed his 1998, 1999, 2000, 2001, 2002, 2003, and 2004 Form 1040s under penalties of perjury. Defendant attached a Schedule B, Interest and Ordinary Dividends, to each of his Form 1040s for tax years 1998 through 2004. Each of the Form 1040s that defendant filed included Part III of Schedule B, Foreign Accounts and Trusts, whereby the Internal Revenue Service asked on Line 7a, "At any time during [calendar year], did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account?" Line 7b stated, "If 'yes,' enter the name of the foreign country." Lines 7a and 7b of Part III of Schedule B attached to the Form 1040s called for material information in that the requested information is necessary for a correct computation of the tax due and owing and has a natural tendency to influence or impede the Internal Revenue Service in ascertaining the correctness of the tax due and owing of the taxpayer. On each of the 1998 through 2004 Form 1040s, defendant falsely answered "No" to line 7a and left the space blank next to line 7b, even though, as he then well knew and understood, he had an interest in, signatory authority, and other authority over financial accounts in foreign countries during these years.

On or about April 15, 2003, in the Central District of California and elsewhere, defendant, a resident of Laguna Beach, California, did willfully make and subscribe a 2002 U.S. Individual Income Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which defendant did not believe this 2002 U.S. Individual Income Tax Return to be true and correct as to every material matter in that Schedule B Part III, Foreign Accounts and Trusts, Line 7a asked "At any time during 2002, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account?" to which said return falsely stated "NO," whereas, as defendant then and there well knew and believed, was a false statement, as defendant had ownership, control, and signatory authority over financial accounts in England, Switzerland, the Bahamas, and Liechtenstein. When defendant signed his 2002 Form 1040, defendant knew that it contained false information as to a material matter, and in filing the false 2002 Form 1040, defendant acted willfully.

WAIVER OF CONSTITUTIONAL RIGHTS

9. By pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right, if defendant wished, to testify on defendant’s own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or

Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF DNA TESTING

10. Defendant has been advised that the government has in its possession the following items of physical evidence that could be subjected to DNA testing:

Documents obtained via search warrants

Defendant understands that the government does not intend to conduct DNA testing of any of these items. Defendant understands that, before entering a guilty plea pursuant to this agreement, defendant could request DNA testing of evidence in this case. Defendant further understands that, with respect to the offense to which defendant is pleading guilty pursuant to this agreement, defendant would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600. Knowing and understanding defendant’s right to request DNA testing, defendant knowingly and voluntarily gives up that right with respect to both the specific items listed above and any other items of evidence there may be in this case that might be amenable to DNA testing. Defendant understands and acknowledges that by giving up this right, defendant is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type. Defendant further understands and acknowledges that by giving up this right, defendant will never have another opportunity to have the

evidence in this case, whether or not listed above, submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offense to which defendant is pleading guilty.

SENTENCING FACTORS

11. Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands, however, that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

12. Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors:

| | | |
|---|---|---|
| Base Offense Level : | 6 | [U.S.S.G. § 2T1.1(a)(2)] |
| Acceptance of Responsibility: | -2 | [U.S.S.G. § 3E1.1(a)] |

Defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, from either the applicable Offense Level or Criminal History Category, be imposed. If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of

the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

13. There is no agreement as to defendant's criminal history or criminal history category.

14. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court; (b) correct any and all factual misstatements relating to the calculation of the sentence; and (c) argue on appeal and collateral review that the Court's sentencing guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.

DEFENDANT'S OBLIGATIONS

15. Defendant agrees that he will:

a) Waive Indictment by Grand Jury, waive venue, and Plead guilty as set forth in this agreement.

b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) Not knowingly and willfully fail to: (i) appear as ordered for all court appearances; (ii) surrender as ordered for service of sentence; (iii) obey all conditions of any bond; and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) To fill out and deliver to the USAO, prior to sentencing, a completed financial statement listing defendant's assets on a form provided by the United States Attorney's Office.

g) Prior to sentencing, abandon his claim for a refund on the 1999 Corporate Return for Olen Properties Corporation ("OPC") seeking a refund based on interest income "paid" from OPC to Sovereign Bancorp Ltd. ("SBL"), another corporation controlled by defendant.

h) Prior to sentencing, defendant will move all money held in foreign financial accounts, including bank and securities accounts, which defendant has an interest in, signature authority, or any other authority, to financial accounts within the United States. Defendant further agrees that during the period of supervised release or probation, that defendant will not have any interest in, signature authority, or any other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account.

i) Cooperate with the Internal Revenue Service in the determination of defendant's civil tax liability and the tax liability of corporations owned and/or controlled by defendant

for the Tax Years 1998-2004. Defendant agrees:

1) That defendant will, prior to the time of sentencing, enter into closing agreements for the years 1998 through 2004 for his Individual Income Tax Returns, correctly reporting unreported income and/or correcting improper deductions and credits, and will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns, and will pay at sentencing all additional taxes, and will pay promptly all penalties and interest assessed by the Internal Revenue Service to be owing as a result of any computational errors.

2) That nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant’s closing agreements.

3) That defendant will not, after entering into the closing agreements, file any claim for refund of taxes, penalties, or interest for amounts attributable to the closing agreements filed in connection with this plea agreement.

4) That defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatement of civil tax liability for Tax Years 1998-2004.

5) To give up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through the execution of search warrants or

through grand jury subpoenas.

THE USAO'S OBLIGATIONS

16. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

a) To abide by all sentencing stipulations contained in this agreement.

b) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

c) Not to further prosecute defendant for violations arising out of defendant's conduct described in the stipulated factual basis set forth in paragraph 8 above or tax violations associated with moneys transferred to and held in foreign bank accounts from 1998 through 2004, or any other conduct known to the Government at the time this agreement is signed by defendant. Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range,

and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors.

BREACH OF AGREEMENT

17. If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of its obligations under this agreement.

18. Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge or any civil or administrative action that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

c) Defendant agrees that: i) any statements made by defendant, under oath, at the guilty plea hearing; ii) the stipulated factual basis statement in this agreement; and iii) any evidence derived from such statements, are admissible against defendant in any future prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

19. Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, (b) the Court in determining the applicable guideline range does not depart upward in offense level or criminal history category and determines that the total offense level is 4 or below, and (c) the Court imposes a sentence within or below the range corresponding to the determined total offense level and criminal history category. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of

conviction. Notwithstanding the foregoing, defendant retains the ability to appeal the conditions of probation or supervised release imposed by the court, with the exception of the following: standard conditions set forth in district court General Orders 318 and 01-05; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20. The USAO gives up its right to appeal the sentence, provided that (a) the Court in determining the applicable guideline range does not depart downward in offense level or criminal history category, (b) the Court determines that the total offense level is 4 or above, and (c) the Court imposes a sentence within or above the range corresponding to the determined total offense level and criminal history category.

<u>COURT NOT A PARTY</u>

21. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the

statutory maximum.

NO ADDITIONAL AGREEMENTS

22. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

23. The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

THOMAS P. O'BRIEN
United States Attorney

[signature] 10/29/07

BRETT A. SAGEL
Assistant United States Attorney

Date

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the

Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

IGOR M. OLENICOFF
Defendant

10/17/07
Date

I am IGOR M. OLENICOFF's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his/her rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

EDWARD M. ROBBINS, JR.
Counsel for Defendant
IGOR M. OLENICOFF

10/17/07
Date